**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, NATIONAL INSTITUTE OF JUSTICE, | ) ) ) ) ) ) | CASE NO. 5:25-cv-2199 |
| PLAINTIFF, | ) ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| VALL ILIEV, VALLMAR STUDIOS, LLC, | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is a motion for default judgment filed by plaintiff United States Department of Justice ("DOJ"), Office of Justice Programs ("OJP"), National Institute of Justice ("NIJ"), against defendants Vall Iliev ("Iliev") and Vallmar Studios, LLC ("Vallmar Studios"), for trademark infringement and counterfeiting claims under the Lanham Act. (Doc. No. 12 (Motion for Default Judgment).)

NIJ alleges that defendants counterfeited an NIJ trademark used to certify that body armor bearing the mark has passed NIJ's rigorous ballistic resistance performance testing. Defendants allegedly affixed the mark on non-tested body armor and advertised the armor as being certified when they were in fact not NIJ-tested. NIJ seeks statutory damages and injunctive relief. For the reasons stated herein, the motion is **GRANTED**.

## I.    BACKGROUND

There are two defendants in this case. Defendants were properly served with summons and a copy of NIJ's complaint. (*See* Doc. Nos. 6 (Return of Service for Vallmar Studios, LLC); 7 (Return of Service for Vall Iliev).) Neither defendant responded nor otherwise defended against the lawsuit. Default was entered against both. (Doc. No. 11 (Entry of Default).) Once a default is entered against a defendant, that party is deemed to have admitted all the well-pleaded allegations in the complaint, except those relating to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995). The following factual allegations from the complaint are deemed admitted by both defendants.

Defendant Vall Iliev is a natural person who is incarcerated in a federal correctional facility. (Doc. No. 1 ¶ 5 (Complaint).) Iliev's last known address before incarceration was 4323 Lorwood Drive, Stow, Ohio 44224. (*Id.*) Defendant Vallmar Studios, LLC is a limited liability company registered with the Ohio Secretary of State on October 6, 2008, with a last known place of business of 1100 Campus Drive, Suite 200, Stow, Ohio 44224. (*Id.* ¶ 6.)

Plaintiff NIJ, a division of OJP and the DOJ, is an institute established by Congress in 1979 to "provide for and encourage research and demonstration efforts for the purpose of improving Federal, State, and local criminal justice systems and related aspects of the civil justice system[.]" (*Id.* ¶ 9 (quoting 34 U.S.C. § 10121).) One of NIJ's statutory duties is to establish and maintain performance standards for use by law enforcement agencies. (*Id.* at ¶ 10 (citing 6 U.S.C. § 162(b)(3)).) That includes testing and evaluating law enforcement equipment and technology. (*Id.*)

Pursuant to its statutory duties, NIJ publishes performance standards for ballistic-resistant body armor. (*Id.* ¶ 11.) It also administers the NIJ Compliance Testing Program ("CTP"), through which it evaluates samples of ballistic-resistant body armor submitted by manufacturers to test for

compliance with NIJ's rigorous performance standards. (*Id.* ¶ 12.) Equipment that meets NIJ's rigorous standards is placed on NIJ's Compliant Product List ("CPL"). (*Id.* ¶ 21.)

NIJ owns a federal certification mark covering goods for law enforcement equipment that passes CTP and is on NIJ's CPL. (*Id.* ¶ 22.) The mark, which was registered on November 12, 2019, is titled "U.S. DEPARTMENT OF JUSTICE NIJ LISTED MODEL OFFICE OF JUSTICE PROGRAMS" and is registered as Reg. No. 5,906,126 ("NIJ mark"). (*Id.*; Doc. No. 1-1 (NIJ Trademark Registration).) A representation of the mark as it appears on the U.S. Trademark and Patent Office's trademark status webpage is copied below:



NIJ requires that body armor manufacturers whose law enforcement technologies pass NIJ's rigorous CTP affix the above NIJ mark as a label on certified products. (Doc. No. 1 ¶ 27.) The NIJ mark is there to "indicat[e] that such armor is of a model that is listed on the CPL." (*Id.*) It has acquired significant goodwill in the marketplace and is "widely recognized by law enforcement . . . as being uniquely and unmistakably associated with NIJ's testing program." (*Id.* ¶ 19.) Law enforcement agencies rely on the NIJ mark to identify body armor equipment purchased for their personnel that is effective in protecting against threats. (*Id.* ¶ 20.)

Defendants admit to counterfeit use of the NIJ mark on body armor products sold on the

marketplace. Iliev did this while serving as the head of two separate companies: Vallmar Studios and non-party ShotStop Ballistics, LLC ("ShotStop"). (*Id.* ¶ 31.) Iliev, through non-party ShotStop, received NIJ's authorization to use the NIJ mark on only three specific ballistic-resistant body armor models which were manufactured in Stow, Ohio. (*Id.* ¶¶ 32–34.) Despite having valid certification only for these three models, Iliev and Vallmar Studios decided to affix the NIJ mark on other body armor models *not* certified as passing CTP, *not* on NIJ's CPL, and therefore *not* authorized to bear the mark. (*Id.* ¶ 36.)

"From approximately 2016 to October 18, 2023, [d]efendants imported body armor and/or body armor materials from China, without the proper testing or disclosure required for compliance with NIJ standards." (*Id.* ¶ 37.) Defendants directed employees of Vallmar Studios to fraudulently affix the NIJ mark on non-conforming body armor. (*Id.* ¶ 41.) They advertised this armor as being "'NIJ certified' for Level III and Level IV protection" and as being made in Stow, Ohio, when neither were true. (*Id.* ¶ 39.) "Iliev knowingly and intentionally caused [Vallmar Studios] to sell the imported body armor fraudulently bearing the NIJ [m]ark to non-party ShotStop." (*Id.* ¶ 42.) Iliev, through non-party ShotStop, knowingly and intentionally advertised imported body armor fraudulently bearing the NIJ mark via the internet. (*Id.* ¶ 43.) Iliev, through ShotStop, advertised and sold body armor fraudulently bearing the NIJ mark on the marketplace and specifically to law enforcement agencies across the country. (*Id.* ¶ 44.)

After years of counterfeiting, Iliev was apprehended and criminally charged for these actions. Law enforcement searched the places of business of Vallmar Studios and ShotStop in October of 2023, where they discovered body armor products bearing counterfeit NIJ marks. (*Id.* ¶ 46.) Exhibits attached to NIJ's complaint show images of infringing body armor. One shows the

infringing products in packaging and ready for shipment. (Doc. No. 1-2, at 2 (Exhibit 2).)[1] An accompanying UPS shipping label and product invoice both list 1000 Campus Drive # 300, Stow, OH 44224, which is Vallmar Studio's place of business. (*Id.*) Another exhibit shows an image of a ShotStop product bearing the NIJ mark. (Doc. No. 1-3 (Exhibit 3).) Defendants possessed dozens of boxes containing products with counterfeit marks in their place of business. (*See* Doc. No. 1-2, at 3.)

Iliev "pleaded guilty to trafficking counterfeit goods or services, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 1349, 2320." (Doc. No. 1 ¶ 48.) Iliev was sentenced to 63 months of imprisonment. (*Id.* ¶ 50.) Both defendants and ShotStop were ordered to pay restitution, jointly and severally, in the amount of $5,248,007.39. (*Id.*)

Shortly thereafter, NIJ brought several causes of action for trademark infringement. Those claims are: (1) Trademark Counterfeiting Used in Commerce in Violation of 15 U.S.C. § 1114(1)(a); (2) Trademark Counterfeiting Placed on Goods Intended to Be Used in Commerce in Violation of 15 U.S.C. § 1114(1)(b); (3) Common Law Trademark Infringement in Violation of 15 U.S.C. § 1125(a); (4) Contributory Trademark Counterfeiting; and (5) Vicarious Trademark Counterfeiting. (*Id.* ¶¶ 51–102.) Defendants failed to respond, and entry of default was entered against them. (Doc. No. 11.) NIJ now moves for default judgment. (Doc. No. 12.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

## II. ANALYSIS

NIJ's motion for default judgment "seeks remedies provided by the Lanham Act, 15 U.S.C. §§ 1116(a), 1117(c), 1118, including: (1) an injunction prohibiting further acts of infringement and requiring the destruction of any remaining infringing products or materials and (2) statutory damages in the amount of $1,000,000." (Doc. No. 12, at 1.) The Court first will review its jurisdiction over this case and then consider each defendant's liability for each stated claim and appropriate relief to award NIJ.

### A. Jurisdiction

As a threshold matter, the Court finds that it has federal question jurisdiction to consider this Lanham Act trademark suit pursuant to 28 U.S.C. §§ 1331, 1338 as well as 15 U.S.C. § 1121. The Court also finds that it has *in personam* jurisdiction over all named defendants.

Iliev was "[t]ransacting . . . business in this state" and "[c]ontracting to supply services or goods in this state" within the ambit of Ohio's long-arm statute. *See* Ohio Rev. Code § 2307.382(A)(1)–(2); *see also Ricker v. Franza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005) ("As used in R.C. 2307.382 and Civ. R. 4.3, 'transact' encompasses 'to carry on a business' and 'to have dealings' and is broader than the word 'contract.'" (citation omitted)). Iliev coordinated with Ohio-based businesses Vallmar Studios and ShotStop for years to import infringing body armor from China into Ohio (*see* Doc. No. 1 ¶¶ 32–39, 45–46), managed and worked with several employees in Ohio through these businesses (*see id.* ¶¶ 6, 40–41, 45–46), and he affixed or directed others to affix counterfeit NIJ marks to body armor which was advertised and sold to consumers across the country from Ohio (*see id.* ¶ 45–46; *see also* Doc. Nos. 1-2, 1-3 (showing infringing body armor at Vallmar Studios' and ShotStop's places of business)).

Moreover, the plea agreement Iliev signed describes actions he did in Ohio and shows he was prosecuted in the Northern District of Ohio. (*See* Doc. No. 1-4 (Iliev Plea Agreement).) Iliev's last known address before his incarceration was in Stow, Ohio, which is located in the Northern District of Ohio. (Doc. No. 1 ¶ 5.) Iliev clearly established years-long sustained, continuous business activities in Ohio sufficient to be subject to personal jurisdiction.

Personal jurisdiction over Iliev is also appropriate under the Due Process Clause of the Fourteenth Amendment. Due process requires that a defendant have "minimum contacts" with the forum state and the exercise of personal jurisdiction must be "consistent with traditional notions of fair play and substantial justice." *Marrick Dish Co., LLC v. Wilkinson CGR Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 455 (N.D. Ohio 2011) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

The Sixth Circuit has a three-part test for determining the limits of *in personam* jurisdiction. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, a defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence therein. *Id.* Second, the cause of action must arise from the defendant's activities in the forum state. *Id.* Third, the defendant's acts, or consequences thereof, must have a substantial enough connection with the forum state that it is reasonable to exercise jurisdiction over the defendant. *Id.* Exercising personal jurisdiction here complies with that test: (1) Iliev purposefully availed himself of the privilege of acting in Ohio by transacting business here, and caused consequences in Ohio by selling body armor bearing counterfeit NIJ marks to consumers in this state; (2) this cause of action arose out of Iliev's trademark counterfeiting via Ohio-based businesses; and (3) Iliev's actions in Ohio are substantial enough that it is reasonable to exercise jurisdiction.

Vallmar Studios is an Ohio limited liability company that dissolved during the course of the litigation on November 4, 2025. (Doc. No. 12-2 (Certificate of Dissolution and Filing Forms).) Under Ohio law, Vallmar Studios retains its capacity to sue and be sued after dissolution. Ohio Rev. Code § 1706.471(C)(2)–(3); *cf. Breen v. Grp. Mgmt. Servs., Inc.*, No. 111253, 2022 WL 3096546, at \*4 (Ohio Ct. App. 2022) (citing Ohio Rev. Code § 1706.471 and noting that "dissolution of a [LLC] does not automatically divest it of authority to pursue civil actions"). For a limited liability company, as with a corporation, the paradigm forum for personal jurisdiction is the state in which the entity was organized. *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (citing Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L. Rev. 721, 728 (1988)); *Butler v. Adient US, LLC*, No. 3:20-cv-2365, 2021 WL 2856592, at \*1 (N.D. Ohio July 8, 2021) (collecting cases showing that "other district courts have determined that LLCs may be considered 'at home' for purposes of general jurisdiction in the states where they were organized"). In Vallmar Studio's case, it is "at home" in Ohio. *See id.*; *Shannon v. Combe Inc.*, No. 1:23-cv-56, 2024 WL 420908, at \*2 (W.D. Ky. Feb. 5, 2024) (holding that LLC was not "at home" in forum state sufficient for general jurisdiction where it was neither organized in nor had a principal place of business in the forum state). Accordingly, the Court may exercise personal jurisdiction over Vallmar Studios.

### B. Liability in a Default Judgment

Federal Rule of Civil Procedure 55 governs default judgments. When the clerk has entered default, as is the case here (Doc. No. 11), the Court may enter default judgment against defendant upon a plaintiff's motion with or without a hearing. Fed R. Civ. P. 55(b). Once a default is entered against a defendant, that party is deemed to have admitted all the well-pleaded allegations in the

complaint, except those relating to damages. *Antoine*, 66 F.3d at 110–11. Even so, the Court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's pleaded claims. *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:18-cv-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted). The Court considers each of the five causes of action for which NIJ seeks default judgment in turn.

   1. *Trademark Counterfeiting and Common Law Trademark Infringement Claims*

NIJ brings two causes of action for trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1)(a) and (b), as well as a cause of action for common law trademark infringement in violation of 15 U.S.C. § 1125(a).

Trademark infringement under 15 U.S.C. §§ 1114 (a) and (b) requires a plaintiff to show that: (1) it owns a valid trademark; (2) defendant used the trademark "in commerce" without plaintiff's authorization; (3) defendant used plaintiff's trademark, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendant's use of plaintiff's trademark is likely to cause consumer confusion. *The Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (citations omitted).

Trademark counterfeiting under 15 U.S.C. § 1114 is a subset of infringement. *Ohio State Univ.*, 16 F. Supp. 3d at 910 (citation omitted). To recover on a trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15

U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010) (citing 15 U.S.C. § 1117(b)). The Lanham Act defines the term "counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such a mark was so registered." *Id.* (citing 15 U.S.C. § 1116(d)(1)(B)(i)). The statute provides a further definition of "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id.* (citing 15 U.S.C. § 1127).

Common law trademark infringement under 15 U.S.C. § 1125(a) requires a showing of: (1) ownership of a valid trademark in connection with specific services; (2) continuous use of the mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) likelihood of confusion amongst consumers due to the contemporaneous use of the parties' marks. *Homeowners Group, Inc. v. Home Mktg. Servs., Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). Likelihood of confusion is the most critical element (i.e., the "touchstone of liability") for trademark claims under both § 1114 and 1125(a). *See Hair Assocs., Inc. v. Nat'l Hair Replacement Services, Inc.*, 987 F. Supp. 569, 581 (W.D. Mich. 1997). For that element, "the same factors are considered under section 1125(a) as are considered under section 1114." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) (quotation marks and citation omitted); *see also Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 659 (E.D. Mich. 2005) (applying same "likelihood of confusion" basic test to claims under §§ 1114 and 1125(a)).

As stated *supra*, defendants are deemed to have admitted all the factual allegations made

against them in NIJ's complaint. Based on these admissions, the Court concludes that NIJ has established the necessary elements for each of its trademark claims. NIJ has shown that it owns a valid, registered trademark[2] (Doc. Nos. 1 ¶¶ 22–26; 1-1), which it regularly used in Ohio and licensed to the Ohio-based defendants (*id.* ¶¶ 32–35). NIJ has also shown that defendants used identical or nearly identical copies of the NIJ mark without authorization by: (1) affixing it to body armor which had not undergone CTP and was not on NIJ's CPL, but advertising and selling the armor as if it met the requirements to bear the NIJ mark; and (2) using the NIJ mark in connection with the sale and advertising of their products to consumers. (*Id.* ¶¶ 35–47.) And by not defending, Defendants admitted to intentional counterfeit use of the NIJ mark. (*Id.* ¶¶ 40–44, 58, 73–74, 81.)

Defendants further admitted that there was likely to be confusion by their counterfeit use of the NIJ mark on non-conforming body armor. (*Id.* ¶¶ 58, 61, 73–74, 79.) Indeed, placing the well-known and highly regarded NIJ mark on body armor that was not NIJ-certified would reasonably cause a consumer to incorrectly believe the non-conforming armor had passed NIJ's stringent CTP. The Court finds there was clearly a dangerous likelihood of consumer confusion.

Moreover, defendants admitted to the same elements of willful trademark counterfeiting when they pleaded guilty to related charges in criminal proceedings against them. (*See* Doc. Nos. 1-4; 1-5 (Vallmar Studios Plea Agreement).) Defendants would be barred by collateral estopped from relitigating liability due to the guilty pleas. *See Columbia Pictures Indus., Inc. v. T & F Enters.*, 68 F. Supp. 2d 833, 838–39 (holding that collateral estoppel applied to issues litigated in a criminal case where defendant pleaded guilty to criminal copyright infringement); *see also U.S.*

---

[2] "[R]egistration of a service mark is prima facie evidence of the registrant's ownership and exclusive right to use the mark." *AMD Southfield Michigan Ltd. P'ship v. Michigan Open MRI LLC*, 337 F. Supp. 2d 978, 981 (E.D. Mich 2004) (citing 15 U.S.C. §§ 1057(b), 1115(a)).

*v. Hintz*, 126 F. Supp. 3d 921, 929 (N.D. Ohio 2015) ("[Defendant]'s guilty plea is an admission of all facts set forth in the indictment that support the elements of the crime charged." (citation omitted)).

NIJ has sufficiently stated a claim for trademark counterfeiting and common law infringement. Accordingly, the Court holds that NIJ is entitled to default judgment for trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1)(a) and (b), as well as trademark infringement in violation of 15 U.S.C. § 1125(a).

### 2. Contributory and Vicarious Trademark Counterfeiting

NIJ also brings two causes of action for contributory trademark counterfeiting and vicarious trademark counterfeiting. "[L]iability under the Lanham Act may be imposed on those who facilitate trademark infringement . . . where a 'distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement[.]'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)). And a plaintiff may hold a defendant vicariously liable under the Lanham Act "when the defendant and the infringer have an actual or apparent partnership, have authority to bind one another in transactions, or exercise joint ownership or control over the infringing product." *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 793 (6th Cir. 2015) (citing *Coach, Inc.*, 717 F.3d at 502). This applies to claims under §§ 1114 and 1125(a). *See Coach, Inc.*, 717 F.3d at 503; *Grubbs*, 807 F.3d at 793.

Here, defendants admitted NIJ's allegation that they coordinated with non-party ShotStop and ShotStop employees to sell untested body armor with the NIJ mark. (Doc. No. 1 ¶¶ 32, 40–44,

85–91.) Defendants induced ShotStop to infringe on NIJ's trademark and provided ShotStop with infringing products for the business to sell. They thus admitted to contributory trademark counterfeiting.

Additionally, Iliev admitted that he "was responsible for all decisions made in operation of both [d]efendant Vallmar and non-party ShotStop." (*Id.* ¶¶ 35, 94–99.) That would necessarily include Vallmar Studios's and ShotStop's acts of affixing the NIJ marks on non-conforming goods and selling them to the public. Iliev used his authority to direct both business entities to engage in counterfeiting. Defendant Vallmar Studios also admitted to using ShotStop to perpetuate trademark infringement. (*Id.* ¶ 101.) The two defendants had joint control over, or at the very least a close and apparent partnership with, ShotStop. Therefore, defendants have admitted to vicarious trademark counterfeiting.

NIJ has sufficiently stated claims for contributory and vicarious trademark infringement. Accordingly, the Court holds that NIJ is entitled to default judgment for each of these claims.

**C. Damages**

NIJ requests statutory damages in the amount of $1,000,00.00 pursuant to 15 U.S.C. § 1117(c) for defendants' trademark infringement. (Doc. No. 12-1 (NIJ's Memorandum in Support), at 14.) Defaulting is not deemed to be a defendant's admission to the amount of damages claimed in a complaint. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citation omitted); Fed. R. Civ. P. 8(b)(6). Even in the context of a default judgment, the Court must ensure that a legitimate basis exists for an award of damages. "A court has wide discretion in determining the amount of statutory damages to be awarded, within the specified limits established by Congress." *Ford Motor Co.*, 441 F. Supp. 2d at 852 (citing *Peer Int'l Corp. v. Pausa Records, Inc.*,

909 F.2d 1332, 1336 (9th Cir. 1990)).

The Lanham Act provides for statutory damages in cases involving the use of a counterfeit mark. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 881 (S.D. Ohio 2007) (citing 15 U.S.C. § 1117(c)). "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Id.* at 882 (collecting cases); *see also Luxottica Group, S.p.A. v. 111 Pit Stop, Inc.*, No. 2:19-cv-15, 2020 WL 4287198, at *7 (M.D. Tenn. July 27, 2020) (same). The Court may award a minimum of $1,000.00 and a maximum of $200,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the [C]ourt considers just[.]" 15 U.S.C. § 1117(c)(1). Proof that the buying public was actually deceived is necessary to recover statutory damages. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).

Moreover, if the Court concludes that a defendant's counterfeit use was willful, the Court may award up to the maximum statutory limit of $2,000,000.00 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just. 15 U.S.C. § 1117(c)(2). An infringement is willful if the defendant "had knowledge that its actions constitute an infringement." *Ford Motor Co.*, 441 F. Supp. 2d at 852 (quoting *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992)). Actual knowledge is not required; constructive knowledge will suffice. *Id.*

Here, defendants counterfeited a single registered trademark. They unlawfully used the mark on body armor, a single class of goods they sold to the public. NIJ proffered proof of actual confusion when defendants admitted that they sold body armor bearing the NIJ mark to the public, including to law enforcement agencies. NIJ showed that the mark is widely recognized as being

14

associated with CTP and that "[l]aw enforcement agencies rely on NIJ's body armor certification program" to ensure any product bearing the mark, including defendants' products, is "effective in protecting against threats." (Doc. No. 1 ¶ 20.)

The Court further finds that defendants' counterfeit use of the NIJ mark was willful. Defendants knew the NIJ marks were only to be used on armor that passed CTP but used the mark on untested products. They admitted to willful counterfeiting by defaulting in this case and in their prior guilty pleas.

Considering the extent and egregiousness of the trademark infringement in this case, the Court finds that NIJ's request for $1,000,000.00 is reasonable. Defendants' counterfeit trademark use was willful, blatant, and lasted over 7 years. Importantly, defendants' actions posed a significant danger to their own customers. Their counterfeit marks misled purchasers as to the safety certification of products meant to be worn to protect against gunshots. Their counterfeiting led to their criminal prosecution, where they were ordered to pay restitution in the amount of $5,248,007.39 and Iliev was sentenced to 63 months of imprisonment. (Doc. No. 1 ¶ 50; *see also* Doc. No. 1-6 (Minutes of Proceeding for Sentencing).) The danger and unacceptable risk of harm defendants' infringement posed to purchasers or the individuals for whom the products were purchased warrants a high award. *See Ill. Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1356 (N.D. Ga. 2011) (awarding total of $1.5 million in statutory damages against two defendants for counterfeiting two registered marks where "defendants marketed and sold counterfeit items that posed a risk to public safety"); *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 615 (C.D. Cal. 2017) (awarding $1 million in statutory damages where counterfeit marks "implicate[d] consumers' perceptions about the safety" of the products). And defendants' conduct

severely tarnished the reputation of NIJ's mark by diminishing the trust consumers have from expecting that any product bearing the mark is CTP compliant. In the interests of creating a strong deterrent to future egregious conduct and to properly compensate NIJ for years of defendants' blatant counterfeiting, a sufficiently large award is in order.

Accordingly, the Court will award NIJ the requested statutory damages. Defendants Iliev and Vallmar Studios are jointly and severally liable to NIJ in the amount of $1,000,000.00.

### D. Injunctive Relief

Finally, NIJ requests injunctive relief. NIJ seeks a permanent injunction, pursuant to 15 U.S.C. § 1116(a), prohibiting defendants from engaging in further acts of trademark infringement and counterfeiting. (*See generally* Doc. No. 12-3 (Proposed Order).) NIJ also seeks an injunction, pursuant to 15 U.S.C. § 1118, ordering that defendants destroy or return to NIJ any of their infringing or counterfeit products unlawfully bearing the NIJ mark. (*Id.*)

"An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute." *Summit Tool Co. v. Xinkong USA, Inc.*, No. 5:20-cv-1182, 2021 WL 3190780, at *7 (N.D. Ohio July 28, 2021) (citations omitted). Here, the Court concludes that no hearing is necessary.

The Lanham Act provides for injunctive relief. *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citing 15 U.S.C. §§ 1116(a) and 1125(c)(2)). A plaintiff seeking a permanent injunction must satisfy a four-factor test to be entitled to that relief. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Those factors are: (1) plaintiff has suffered an irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) considering the balance of hardship between the plaintiff and the defendant, a remedy in equity is

warranted; and (4) the public interest would not be disserved by a permanent injunction. *See id.*

With regards to the first factor, "no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Microsoft Corp*, 490 F. Supp. 2d at 882 (citations omitted). Indeed, "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement[,]" as is the case here. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)) (internal quotation marks and further citation omitted). The first factor unquestionably favors imposition of an injunction.

For the second factor, "where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citation omitted). Here, Vallmar Studios is dissolved. But Ohio law provides that Vallmar Studios "continues its existence as a [LLC] but may not carry on any activities except as is appropriate to wind up and liquidate its activities and affairs." Ohio Rev. Code § 1706.471(A). The statute lists several acts which constitute winding up of an LLC, such as "[c]ollecting its assets" "[d]isposing of its properties that will not be distributed in kind to persons owning membership interests," and "[d]istributing its remaining property in accordance with section 1706.475 of the Revised Code[.]" Ohio Rev. Code § 1706.471(A)(1)–(2), (4). Because the statute allows Vallmar Studios to distribute or dispose of its property, there exists a potential that any infringing products still in its possession could be distributed or sold to others. Moreover, "[w]here, as here, the defendant defaults, a court may infer that the defendant is willing to, or may continue its infringement." *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 52–53 (S.D.N.Y. 2022) (internal quotations and citations

17

omitted). The second factor as applied to Vallmar Studios favors an injunction.

Iliev is serving a 63-month sentence. Iliev's willful and blatant trademark counterfeiting, which reaped significant profits for him prior to his apprehension,[3] raises the possibility that Iliev may again infringe the NIJ mark after completion of his sentence. The cessation of his infringement was not voluntary, but resulted from his arrest, conviction, and incarceration. And, like Vallmar Studios, Iliev's default in this case allows the Court to infer will to re-infringe. *See id*. There is a potential for future infringement and thus no adequate remedy at law. The second factor as applied to Iliev favors an injunction.

Regarding the balance of hardships, the legal analysis differs somewhat for each requested injunction. For the request to enjoin future trademark infringement, "there is no harm to the [d]efendant[s] inasmuch as [the] injunction will merely require [them] to comply with the . . . Lanham Act." *Microsoft Corp.*, 490 F. Supp. 2d at 883 (citation omitted); *see also Audi AG*, 469 F.3d at 550 (noting that defendant "faces no hardship in refraining from willful trademark infringement"). And for the request to order that defendants deliver up and destroy all infringing products, Vallmar Studios will likewise face no significant hardship. Vallmar Studios must dispose of its assets as part of its winding up—including disposal of counterfeited body armor that would be unlawful to sell on the marketplace. There are presumably individuals who are in charge of winding up the LLC's affairs. An injunction here would merely require Vallmar Studios to arrange for removal of the marks or destruction of products already destined for disposal. Defendant Iliev faces a greater hardship for the second injunction in that he must comply while under incarceration.

---

[3] Iliev's plea agreement provides that the more than $5 million in restitution he must pay is meant to recoup "the losses caused by [d]efendant's relevant conduct" in his counterfeiting sales of body armor. (*See* Doc. No. 1-4, at 11.)

18

But the factual allegations of the complaint strongly imply Iliev has business contacts who have access to the body armor and the locations where the products were stored. (*See* Doc. No. 1 ¶¶ 40 (detailing Iliev's "meeting with employees of non-party ShotStop"), 41 (detailing Iliev "direct[ing] employees of Vallmar to fraudulently affix decals bearing the NIJ mark")).) Iliev could arrange for others to offer up and destroy infringing armor.

NIJ, meanwhile, will suffer severe hardship from loss of goodwill and reputation of its NIJ mark absent any injunction. The mark is closely associated with NIJ's CTP certification, which is highly regarded by body armor purchasers. The potential for further degradation of the mark's due to its association with uncertified CTP armor could irreparably diminish the mark's value as perceived by the marketplace. NIJ clearly faces substantially greater hardship than defendants. This factor favors ordering both injunctions.

For the final factor, "it is in the public interest to enforce federal trademark laws and to prevent consumers from being misled and confused by [counterfeiting]." *Summit Tool Co.*, 2021 WL 3190780, at *7. That interest is particularly strong here, where the counterfeit marks create a public safety hazard for purchasers of non-NIJ tested body armor. An injunction would "prevent[] consumer confusion and deception in the marketplace and protect[] the trademark holder's property interest in the mark." *Microsoft Corp.*, 490 F. Supp. 2d at 883 (citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006)). This factor strongly favors the injunctions NIJ requests.

The four factors favor granting injunctive relief. The Court finds that NIJ is entitled to both requested permanent injunctions under 15 U.S.C. §§ 1116(a) and 1118.

## III.   CONCLUSION

Defendants advertised, distributed, and sold in the marketplace body armor bearing a false NIJ mark (an "Infringing Good") without the trademark owner's authorization. Their counterfeiting tarnished the industry reputation of the NIJ mark and cause injury to NIJ's property rights in the mark. Moreover, the counterfeit marks endangered public safety by misleading purchasers, including law enforcement, about the efficacy of the ballistic protection of armor meant to prevent bodily harm.

For the reasons stated in this memorandum opinion and order, the Court **GRANTS** plaintiff NIJ's motion for default judgment. (Doc. No. 12.) It is hereby **ORDERD** that:

A.   Judgment be entered in favor of NIJ and against both defendants for a total of One Million Dollars ($1,000,000) in statutory damages, jointly and severally.

B.   Defendants, and all of defendants' successors, assigns, affiliates, agents, servants, employees and representatives, and all persons, firms, and corporations in active concert or participation with the defendants who receive actual notice of this Order, are hereby permanently enjoined and restrained from:

1.   Advertising, selling, importing, exporting, or offering for sale any Infringing Goods;

2.   Shipping, delivering, or distributing any Infringing Goods, except for the purpose of delivering to NIJ for destruction of Infringing Goods pursuant to this Order;

3.   Imitating, copying, duplicating and otherwise making any use of the NIJ mark in connection with any goods or services;

4. Using any simulation, reproduction, or any unauthorized copy or colorable imitation of the NIJ mark in connection with the promotion, advertisement, display, sale, offering for sale, shipping, importing, exporting, delivery, distribution, transfer, returning, holding for sale, or other movement or marketing, of any product or service (including, but not limited to, ballistic resistant body armor);

5. Making any statement which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that defendants are an authorized manufacturer of NIJ-certified products or are otherwise authorized by or affiliated with NIJ;

6. Enabling access to any website, including but not limited to any third-party e-commerce platform or social media website, featuring any goods bearing any simulation, reproduction, or any unauthorized copy or colorable imitation of the NIJ mark;

7. Causing likelihood of confusion or injury to NIJ's reputation and to the distinctiveness of the NIJ mark by unauthorized use of the mark;

8. Engaging in any other activity constituting infringement of the NIJ mark, or NIJ's rights in, or to use or exploit, the mark;

9. Importing into the United States any goods bearing any simulation, reproduction, or any unauthorized copy or colorable imitation of the NIJ mark;

10. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

11. Assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (1) through (10) above.

C. Within 30 days of being served with a copy of this Order, defendants must at their own cost deliver to NIJ all Infringing Goods for destruction pursuant to 15 U.S.C. § 1118.

The Court will retain jurisdiction to construe, enforce, or implement this Order and the contemporaneously filed judgment entry upon application of any party. This case is **CLOSED**.

**IT IS SO ORDERED**.

Dated: May 19, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**